## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE AASE, as Next Friend on behalf of her minor son, Q.D., and in her individual capacity, | ) ) ) ) |
| | )   **Jury Demanded** |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | )   **JURY TRIAL DEMANDED** |
| **EAST PEORIA COMMUNITY SCHOOL DISTRICT 309,** | ) ) |
| | ) |
| **CITY OF EAST PEORIA** | ) |
| | ) |
| **EAST PEORIA POLICE OFFICER DAVID A ROOS** | ) ) |
| | ) |
| **Defendants.** | ) ) |

### AMENDED COMPLAINT

Plaintiff Stephanie Aase ("***Aase***"), both individually and on behalf of her minor child, Q.D. ("***Q.D.***" or "***Student***") (collectively "***Plaintiffs***"), through their attorneys, pursuant to the Americans With Disabilities Act of 1990 ("***ADA***"), 42 U.S.C. §§ 12101 *et seq.*, the Illinois Human Rights Act ("***IHRA***"), 775 ILCS 5/1-101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. . §§ 794 *et seq.*, and Illinois Common Law for their Complaint regarding disability discrimination against Defendant East Peoria District 309 ("***School District***"), Defendant City of East Peoria ("***City***"), and East Peoria Police Officer David A. Roos ("***Roos***") (collectively "***Defendants***") and an award of monetary damages, attorney's fees and costs, states as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331, 20

U.S.C. § 1415(i)(3), 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 1983 and 12117(a), and the United States Constitution.

2.     This Court has supplemental jurisdiction over this controversy for the IHRA and common law claims pursuant to 28 U.S.C. § 1367.

3.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4.     This venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this Complaint occurred within this District.

## PARTIES

5.     Plaintiff Q.D. is a fifteen-year-old boy who resides with his mother, Plaintiff Stephanie Aase, in East Peoria, Illinois.

6.     Student is a person entitled to the protections of 42 U.S.C. § 12111(8).

7.     Plaintiff Q.D. is and was at all times pertinent hereto, a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1) and 775 ILCS 60/15 in that he has an Emotional Disorder, Attention Deficit Hyperactivity Disorder ("*ADHD*"), and anxiety.

8.     Plaintiff Q.D. is a student as defined by 775 ILCS 5/5A-102(C).

9.     Plaintiff Aase is a resident of the United States and resides in the Central District of Illinois.

10.     Plaintiff Aase is associated with an individual with a disability, her son, Student, as defined by 775 ILCS 5/1103(I)(2) and 42 U.S.C. § 12111(8).

11.     School District is the governmental unit responsible for administering public special education schools, programs, and services within the area it serves and is the "local education agency" as defined by 20 U.S.C. § 1401(19).

12.     School District is obligated under federal and state law to provide a "free and

2

appropriate public education" to all children with disabilities who reside within its educational boundaries, including Plaintiff Q.D.

13.     Steve Matheny is the president of the Board of Education of School District, which has its principal place of business at 1401 East Washington Street, East Peoria, IL 61611.

14.     School District is an institution of elementary, secondary, or higher education as defined by 775 ILCS 5/5A-102(A).

15.     Defendant School District is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(J) and 775 ILCS 5/5A-102(A) and is subject to the requirements of Title II of the ADA and the IHRA.

16.     Defendant City of East Peoria is a municipal corporation duly incorporated under the laws of the State of Illinois.

17.     City was and is the public employer of the East Peoria Police Department ("***Police Department***").

18.     Defendant City is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(J) and is subject to the requirements of Title II of the ADA.

19.     Police Department provides school resource officers to School District.

20.     Defendant Roos was the police officer assigned as the school resource officer at the time of the events below.

21.     Defendant Roos is a present or former employee of the City of East Peoria Police Department.

22.     Defendant Roos engaged in the conduct complained of while on duty, in the course and scope of his employment, and under the color of law.

23.     Plaintiffs are suing Defendant Roos in his individual capacity.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

24.     Student is a person with multiple disabilities. He has been diagnosed with Emotional Disorder, Attention Deficit Hyperactivity Disorder ("*ADHD*"), and anxiety.

25.     Student's diagnosis of Emotional Disorder, ADHD, and anxiety substantially limits his ability to engage in one or more life activities in that he is unable to build or maintain satisfactory interpersonal relationships with peers or teachers; has inappropriate types of behaviors or feelings under normal circumstances; has a general pervasive mood of unhappiness or depression; tends to develop symptoms or fears associated with personal or school problems; is easily annoyed, irritated, nervous or anxious; has difficulty following rules/questions authority; has difficulty handling and coping with frustration; has low self-esteem; has intense, persistent emotional responses that can interfere with daily function; and has difficulty managing and expressing emotions.

26.     Student's disabilities affect his ability to work and interact with others. Student's disabilities also affect his ability to focus as he is easily distracted.

27.     Student's disabilities affect his ability to learn because they affect his memory and interfere with his ability to think, concentrate, and sleep.

28.     Student's disabilities affect his ability to regulate his emotions and make him overly emotional, which can cause him to break down and affect him more than the average individual.

29.     Due to his disabilities, Student elopes as a coping skill.

30.     Student can only access his educational services with reasonable accommodations.

31.     Because of Plaintiff Q.D.'s disabilities, School District provides Student with the reasonable accommodations of allowing Student to leave class as needed in order to calm himself and self-regulate.

32.     Student is also allowed to call Aase as needed as an accommodation.

33.     Defendants are aware of Student's disabilities and/or regard Student as disabled.

34.     Defendants are aware of Plaintiff Aase's association with a disabled person, her son Student.

35.     Defendants are aware that elopement is a symptom of Student's disability.

36.     Defendants are award of Student's accommodations described above.

37.     On August 31, 2023, Student's math teacher believed Student and two other students were cheating on a math test.

38.     The teacher sent Student to the principal's office and did not send the other two students to the principal's office.

39.     Upon information and belief, the other two students are not disabled or at least do not share Student's diagnoses.

40.     Once in the principal's office, Principal lectured Student on his behavior and Student became dysregulated

41.     Due to his disability, the lecture made Student anxious and overly emotional. As a result, when the bell rang for the next class, Student left the principal's office in order to self-regulate per his accommodation.

42.     The principal subsequently went to Student's class and tried to force him out of the room. Student became more dysregulated and attempted to call his mother, Aase per his accommodation.

43.     The principal did not allow Student to complete the call and physically removed Student from the classroom and locked him out.

44.     Student's disability causes him to have inappropriate types of behaviors or feelings

under normal circumstances.

45.     Now feeling panicked and fully dysregulated, Student tried to elope to the bathroom.

46.     The principal then restrained Student around his chest, and called Defendant Roos, the school resource officer.

47.     Defendant Roos was an East Peoria Police Department Officer.

48.     Student insisted that he did not want to leave school but wanted to calm down.

49.     Defendant Roos responded by pushing Student to the ground in a prone restraint.

50.     Per 23 IAC 1.285(d)(4)(F), prone restraint is prohibited in all Illinois public schools, special education cooperatives, and nonpublic facilities.

51.     Student struggled while in the restrained hold as his anxiety grew.

52.     A second officer arrived and helped Roos hold Student face-down on the ground.

53.     Defendant Roos subsequently handcuffed Student's hands behind his back.

54.     Defendant Roos eventually pulled Student from the ground and "perp walked" him to a police car parked outside the school building.

55.     At one point, three officers surrounded Student.

56.     Plaintiff Aase arrived, and Defendant Roos eventually uncuffed and released Student to his mother's care.

57.     Defendant Roos's report regarding the incident alleges that Student kicked the resource officer and Student's mother.

58.     Video surveillance of the incident contradicts this account.

59.     The officers handcuffed Student so tightly he had marks and bruises on his wrist.

60.     Student repeatedly stated that he was hurt and could not feel his hands, but the police did not do anything.

6

61.     Additionally, Student stated he could not breathe, but the police did not assist him.

62.     Defendants improperly restrained Student because he manifested known symptoms of his disability.

63.     Student's reactions were consistent with his disabilities of emotional disorder.

64.     When speaking with Aase while Student was in the police car, Defendant Roos reminded Aase that "[he] told [her] this summer, this is how it's going to be if he doesn't act right."

65.     School District subsequently isolated Plaintiff Q.D.  from the other students.

66.     City charged Plaintiff Q.D. with aggravated battery and resisting/obstructing a peace officer.

67.     Student did not, and there was no evidence of Plaintiff Q.D. battering another individual or obstructing a peace officer.

68.     The Court dismissed the charges against Student in a manner indicative of Student's innocence.

69.     At this time, no one observed Student committing any crimes.

70.     At this time, no one had probable cause to arrest Student for any crimes.

71.     In addition to the pain and suffering from his physical injuries, Student also endured psychological injuries including, but not limited to, extreme anxiety and depression.

72.     None of the police officers received training from the Defendant City of East Peoria to recognize, render aid to, or accommodate individuals suffering from mental health disabilities.

73.     As a result of the City of East Peoria's failure to provide adequate training as set forth herein, Student was harmed.

74.     School District did not discipline the two non-disabled individuals involved in the incident with the math teacher.

7

75.    After August 2023 incidents, Plaintiff Aase expressed concerns throughout the semester regarding Student's safety and whether School District followed Plaintiff's accommodations.

76.    On January 26, 2024, School District sent Student home from school, claiming that Student requested to go home.

77.    School District, not Plaintiffs, wanted Student to leave.

78.    Plaintiff Aase told School District that she believed School District sent Student home on January 26, 2024, because it did not want to accommodate Student's disabilities.

79.    On January 31, 2024, School District again tried to send Student home from school, though Student did not want to go home.

80.    Upon information and belief, School District also attempted multiple times to force Student to leave class in an effort to avoid providing him with reasonable accommodation.

81.    After the January 31, 2024, incident, Plaintiff Aase told School District that she believed School District attempted to send Student home from school to avoid accommodating his disabilities.

82.    Shortly after, the education director called Plaintiff Aase and informed Plaintiff Aase that School District wanted to change Student's educational placement.

83.    Upon information and belief, School District threatened to change Student's educational placement in retaliation for Plaintiff Aase's comments to School District that she believed they were discriminating against Student due to his disability.

84.    School District has acted under the color of state law and engaged in the discriminatory and illegal practices described herein deliberately and with deliberate indifference to Plaintiffs' rights.

85.     City has acted under the color of state law and engaged in the discriminatory and illegal practices described herein deliberately and with deliberate indifference to Plaintiffs' rights.

86.     On February 28, 2024, Plaintiffs Q.D. and Aase timely filed charges of Discrimination with the Illinois Department on Human Rights.

87.     School District has acted under the color of state law and engaged in the discriminatory and illegal practices described herein deliberately and with deliberate indifference to Q.D.'s rights.

88.     On February 28, 2024, Plaintiffs timely filed charges of Discrimination with the Illinois Department on Human Rights.

89.     On November 4, 2024, the Illinois Department of Human Rights issued its notice of dismissal on the two charges. Plaintiffs attach the rights to sue as Exhibit 1.

90.     Plaintiffs timely filed this lawsuit within ninety (90) days of the Notice of Dismissal.

## COUNT ONE: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT- FAILURE TO ACCOMMODATE BY DEFENDANT SCHOOL DISTRICT AGAINST PLAINTIFF Q.D.

91.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

92.     Plaintiff Q.D. is, and was at all times pertinent hereto, a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1) in that he has an Emotional Disorder, ADHD, and anxiety.

93.     Student's Emotional Disorder, ADHD, and anxiety is a disability as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Plaintiff Q.D.; a record of such an impairment; and/or School District perceives him to have a disability.

94.     Defendant School District is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(J) and is subject to the requirements of Title II of the ADA.

9

95.    Plaintiff Q.D. can access and complete the services offered by Defendant School District with a reasonable accommodation.

96.    By its conduct, described in more detail above, Defendant School District failed to provide reasonable accommodations to Plaintiff Student, including but not limited to the failure to honor the use of a break pass as a reasonable accommodation to allow self-regulation. This denial interfered with Plaintiff Q.D.'s ability to access and benefit from the educational services, programs, and activities offered by School District in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

97.    Defendant School District's conduct further resulted in the inappropriate use of prone restraint, exclusion from educational services, and attempts to alter Plaintiff Q.D.'s educational placement without justification, which denied Plaintiff Q.D. meaningful participation in School District's programs and activities.

98.    Defendant School District's actions were intentional, deliberate, and in willful disregard of Plaintiff Q.D.'s rights.

99.    As a proximate result of School District's conduct, Plaintiff has suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

WHEREFORE, Plaintiff Q.D. respectfully requests judgment in his favor and that this Court award Plaintiff Q.D. such damages as would fully compensate him for his injuries caused by Defendant School District's actions; punitive damages; statutory interest; pre- and post-judgment interest; costs and expenses; reasonable attorney fees; and grant any additional relief as the Court deems just and proper.

### COUNT TWO: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT- DISABILITY DISCRIMINATION BY DEFENDANT SCHOOL DISTRICT AGAINST PLAINTIFF Q.D.

100.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

101.    Plaintiff Q.D. is, and was at all times pertinent hereto, a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1) in that he has an Emotional Disorder, ADHD, and anxiety.

102.    Student's Emotional Disorder, ADHD, and anxiety is a disability as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Plaintiff Q.D.; a record of such an impairment; and/or School District perceives him to have a disability.

103.    Plaintiff Q.D. can access and complete the services offered by Defendant School District with a reasonable accommodation.

104.    Defendant School District is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(J) and is subject to the requirements of Title II of the ADA.

105.    By its conduct, described in more detail above, Defendant School District discriminated against Plaintiff Q.D. by sending him home, calling the police after him, having the police put Plaintiff Q.D. in a prone hold, punishing him, and attempting to change his placement because of his disability. This denial interfered with Plaintiff Q.D.'s ability to access and benefit from the educational services, programs, and activities offered by School District in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

106.    By its conduct, described in more detail above, Defendant School District treated Plaintiff Q.D. differently than other students because of his disabilities. Specifically, Defendant School District disciplined Plaintiff Q.D. more harshly than other students without disabilities, engaged in physical restraint in violation of Illinois regulations, and repeatedly sought to exclude Plaintiff from the educational environment. This conduct constitutes disparate treatment based on disability in violation of 42 U.S.C. § 12182(a).

107.    Defendant School District's conduct further resulted in the inappropriate use of prone restraint, exclusion from educational services, and attempts to alter Plaintiff Q.D.'s educational placement without justification, which denied Plaintiff Q.D. meaningful participation in School District's programs and activities because of Plaintiff Q.D.'s disabilities.

108.    Defendant School District's actions were intentional, deliberate, and in willful disregard of Plaintiff Q.D.'s rights.

109.    As a proximate result of School District's conduct, Plaintiff Q.D. has suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

WHEREFORE, Plaintiff Q.D. respectfully requests judgment in his favor and that this Court award Plaintiff Q.D. such damages as would fully compensate him for his injuries caused by Defendant School District's actions; punitive damages; statutory interest; pre- and post-judgment interest; costs and expenses; reasonable attorney fees; and grant any additional relief as the Court deems just and proper.

## COUNT THREE: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT FOR RETALIATION BY DEFENDANT SCHOOL DISTRICT AGAINST PLAINTIFFS

110.    Plaintiffs incorporate the allegations listed above by reference.

111.    Plaintiff Q.D. is and was at all times pertinent hereto a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1) in that he has an Emotional Disorder, ADHD, and anxiety.

112.    Student's Emotional Disorder, ADHD, and anxiety is a disability as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Student; a record of such an impairment; and/or School District perceives him to have a disability.

113.    Plaintiff Aase is associated with Student, who School District knows has a disability.

114.    Defendant School District is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(J) and is subject to Title II of the ADA.

115.    Pursuant to 42 U.S.C. § 12203, it is unlawful to retaliate against any individual because they oppose disability discrimination or assert the rights of a person with a disability under the ADA.

116.    Plaintiffs engaged in protected activity by advocating for Student's rights under the ADA, including requesting reasonable accommodations and challenging the improper use of physical restraint and the failure to implement his Behavior Intervention Plan.

117.    Defendant School District retaliated against Student by:

    a.   Ignoring their concerns regarding the discriminatory treatment of Student

    b.   Failing to engage in a collaborative process to address Student's educational needs.

    c.   Taking actions designed to discourage and intimidate Plaintiffs from further advocacy.

118.    At all relevant times, Defendant School District acted with deliberate indifference to Plaintiffs federally protected rights under the ADA.

119.    As a direct and proximate result of Defendant School District's retaliatory conduct, Plaintiffs suffered emotional distress, humiliation, mental anguish, inconvenience, and interference with his ability to advocate for himself.

WHEREFORE, Plaintiffs respectfully requests judgment in their favor and that this Court award Plaintiffs such damages as would fully compensate them for their injuries caused by School District's actions; punitive damages; pre- and post-judgment interest; statutory interest; costs and expenses; reasonable attorney fees; and grant any additional relief as the Court deems just and proper.

13

**COUNT FOUR: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT FOR ASSOCIATION WITH AN INDIVIDUAL WITH A DISABILITY DISCRIMINATION BY DEFENDANT SCHOOL DISTRICT AGAINST PLAINTIFF AASE**

120.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

121.    Plaintiff Q.D. is, and was at all times pertinent hereto, a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1) in that he has an Emotional Disorder, ADHD, and anxiety.

122.    Plaintiff Q.D.'s Emotional Disorder, ADHD, and anxiety is a disability as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Plaintiff; a record of such an impairment; and/or School District perceives him to have a disability.

123.    Plaintiff Aase is associated with Plaintiff Q.D., who School District knows has a disability.

124.    Defendant School District is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(J) and is subject to Title II of the ADA.

125.    Pursuant to the ADA, it is discriminatory to exclude or otherwise deny services or opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

126.    Plaintiff Q.D. can access his education with reasonable accommodation.

127.    The accommodations requested by Plaintiff Aase on behalf of Q.D. did not impose an undue financial or administrative burden or fundamentally alter the nature of School District's programs.

128.    School District committed a civil rights violation, in violation of the Americans with Disability Act, when it failed to take appropriate disciplinary action against a representative of an institution of elementary, secondary, or higher education when it knew that the representative

14

was discriminating against Q.D. due to his disability by allowing administrators and teachers to treat him differently due to his disability, causing him to be excluded from school.

129.    School District committed a civil rights violation, in violation of the IHRA, when it did not take Aase's concerns regarding her advocacy for Student and the denial of his accommodations seriously due to the fact she is associated with an individual with a disability.

130.    At all relevant times herein, School District had actual knowledge of Student's meaningful exclusion from school and the substantial risk of harm that this created for Student

131.    School District was deliberately indifferent to Plaintiff Aase's unqualified right to advocate for Q.D.'s meaningful participation in its education programs.

132.    By refusing to make reasonable accommodations to its education programs to allow Plaintiff Aase to advocate for Student's meaningful participation in education programs, School District discriminated against Plaintiff Aase on the basis of her association with an individual with a disability.

133.    By refusing to make reasonable accommodations to its education programs to allow Plaintiff Aase to advocate for Student's meaningful participation in education programs, School District discriminated against Plaintiff Aase on the basis of her association with an individual with a disability by disregarding her ability to advocate for her child and causing her to take off time from work due to School District denying her son an education.

134.    By disregarding Plaintiff Aase's ability as a parent to advocate for Plaintiff Q.D.'s meaningful participation in education programs, School District discriminated against Plaintiff Aase on the basis of her association with an individual with a disability.

135.    School District discriminated against Plaintiff Aase on the basis of her association with an individual with a disability by treating her differently and not taking her concerns as

seriously as they would take the concerns of a similarly situated parent who did not have a student with a disability.

136.    As a proximate result of School District's conduct, Plaintiff Aase suffered lost wages, emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

WHEREFORE, Plaintiff Aase respectfully requests judgment in her favor and that this Court award Plaintiff Aase such damages as would fully compensate her for her injuries caused by School District's actions; punitive damages; pre- and post-judgment interest; statutory interest; costs and expenses; reasonable attorney fees; and grant any additional relief as the Court deems just and proper.

### COUNT FIVE: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT FOR FAILURE TO ACCOMMODATE BY SCHOOL DISTRICT AGAINST PLAINTIFF Q.D.

137.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

138.    It is the public policy of Illinois to prevent disability discrimination in elementary, secondary, and higher education.

139.    Q.D. is a qualified individual with a disability within the meaning of 775 ILCS 5/1-103(I)(1). He has mental impairments that substantially limit major life activities, including thinking and learning.

140.    Q.D. can access his education with reasonable accommodation.

141.    Defendant School District is an institution of education within the meaning of 775 ILCS 5/5A-102(A).

142.    The requested accommodation did not impose an undue financial or administrative burden or fundamentally alter the nature of School District's programs.

143.    School District is an Institution of Elementary, Secondary, or Higher Education as

16

defined by 775 ILCS 5/5A-102(A).

144.    Plaintiff is a student as defined by 775 ILCS 5/5A-102(C).

145.    In relevant part, 775 ILCS 5/1-102(A) states it is the public policy of this state "[t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her…disability….and the availability of public accommodations."

146.    School District committed a civil rights violation, in violation of the IHRA, when it failed to provide Plaintiff Student with reasonable accommodations, including but not limited to the failure to honor Plaintiff's use of a break pass as needed. Instead of accommodating Plaintiff's needs, Defendant engaged in actions that excluded Plaintiff from the classroom, escalated disciplinary consequences, and denied him access to educational programs and activities.

147.    At all relevant times herein, School District had actual knowledge of Q.D.'s meaningful exclusion from school and the substantial risk of harm that this created for Q.D.

148.    School District was deliberately indifferent to Q.D.'s unqualified right to meaningful participation in its education programs.

149.    By refusing to provide reasonable accommodation to its education programs to allow Q.D. to participate meaningfully, School District discriminated against Q.D. on the basis of his disability in violation of the IHRA.

150.    As a proximate result of School District's conduct, Plaintiff has suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

WHEREFORE, Plaintiff Q.D. respectfully requests judgment in his favor and that this Court award Plaintiff Q.D. such monetary damages as would fully compensate him for his injuries caused by School District's actions; statutory interest; pre- and post-judgment interest; costs and

expenses; reasonable attorney fees; and grant any additional relief as the Court deems just and proper.

### COUNT SIX: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT FOR DISCRIMINATION BASED ON DISABILITY BY SCHOOL DISTRICT AGAINST PLAINTIFF Q.D.

151.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

152.    It is the public policy of Illinois to prevent disability discrimination in elementary, secondary, and higher education.

153.    Q.D. is a qualified individual with a disability within the meaning of 775 ILCS 5/1-103(I)(1). He has mental impairments that substantially limit major life activities, including thinking and learning.

154.    Defendant School District is an institution of education within the meaning of 775 ILCS 5/5A-102(A).

155.    School District is an Institution of Elementary, Secondary, or Higher Education as defined by 775 ILCS 5/5A-102(A).

156.    Plaintiff is a student as defined by 775 ILCS 5/5A-102(C).

157.    Under the IHRA, it is unlawful for a place of education to discriminate against a student because of a disability. 775 ILCS 5/5A-101 et al.

158.    By its conduct, described in more detail above, Defendant School District committed a civil rights violation of the IHRA, when it discriminated against Plaintiff Q.D. by sending him home, calling the police after him, having the police put Plaintiff Q.D. in a prone hold, punishing him, and attempting to change his placement because of his disability. This denial interfered with Plaintiff Q.D.'s ability to access and benefit from the educational services, programs, and activities offered by School District in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

159.    By its conduct, described in detail above, Defendant School District treated Plaintiff Q.D. differently than students without disabilities. Defendant subjected Plaintiff Q.D. to harsher discipline, improper physical restraint, and exclusionary practices. Such actions were taken based on Plaintiff's disabilities and constitute disparate treatment under the IHRA.

160.    Defendant School District's conduct further resulted in the inappropriate use of prone restraint, exclusion from educational services, and attempts to alter Plaintiff Q.D.'s educational placement without justification, which denied Plaintiff Q.D. meaningful participation in School District's programs and activities because of Plaintiff Q.D.'s disabilities.

161.    At all relevant times herein, School District had actual knowledge of Q.D.'s meaningful exclusion from school and the substantial risk of harm that this created for Q.D.

162.    School District was deliberately indifferent to Q.D.'s unqualified right to meaningful participation in its education programs.

163.    By refusing to provide reasonable accommodation to its education programs to allow Q.D. to participate meaningfully, School District discriminated against Q.D. on the basis of his disability in violation of the IHRA.

164.    As a proximate result of School District's conduct, Plaintiff has suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

WHEREFORE, Plaintiff Q.D. respectfully requests judgment in his favor and that this Court award Plaintiff Q.D. such monetary damages as would fully compensate him for his injuries caused by School District's actions; statutory interest; pre- and post-judgment interest; costs and expenses; reasonable attorney fees; and grant any additional relief as the Court deems just and proper.

## COUNT SEVEN: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT FOR RETALIATION BY SCHOOL DISTRICT AGAINST PLAINTIFFS

165.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

166.    It is the public policy of Illinois to prevent disability discrimination in elementary, secondary, and higher education.

167.    Plaintiff Q.D. is a qualified individual with a disability within the meaning of 775 ILCS 5/1103(I)(1). He has physical and mental impairments that substantially limit major life activities, including thinking, communicating, and learning.

168.    Plaintiff Q.D. can access his education with reasonable accommodation.

169.    The IHRA prohibits retaliation against individuals who oppose practices made unlawful under the Act, including disability discrimination.

170.    Plaintiffs engaged in protected activity under the IHRA by advocating for reasonable accommodations, raising concerns about improper physical restraint, and opposing discrimination by Defendant School District.

171.    Defendant retaliated against Plaintiffs by engaging in the following adverse actions:

  a.    Ignoring their complaints regarding the discriminatory treatment of Plaintiff Q.D.

  b.    Failing to engage in a collaborative process to address Plaintiff Q.D.'s educational needs.

  c.    Taking actions designed to discourage and intimidate Plaintiffs from further advocacy.

172.    Defendant School District's retaliatory conduct was motivated by Plaintiffs' opposition to Defendant School District's unlawful practices under the IHRA.

173.    As a proximate result of School District's conduct, Plaintiffs suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

WHEREFORE, Plaintiffs respectfully requests judgment in their favor and that this Court award Plaintiffs such monetary damages as would fully compensate them for their injuries caused by School District's actions; statutory interest; pre- and post-judgment interest; costs and expenses; reasonable attorney fees; and grant any additional relief as the Court deems just and proper.

### COUNT EIGHT: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT FOR DISCRIMINATION FOR ASSOCIATION WITH AN INDIVIDUAL WITH A DISABILITY DISCRIMINATION BY SCHOOL DISTRICT AGAINST PLAINTIFF AASE

174.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

175.    It is the public policy of Illinois to prevent disability discrimination in elementary, secondary, and higher education.

176.    Plaintiff Q.D. is a qualified individual with a disability within the meaning of 775 ILCS 5/1103(I)(1). He has physical and mental impairments that substantially limit major life activities, including thinking, communicating, and learning.

177.    Plaintiff Q.D. can access his education with reasonable accommodation.

178.    Plaintiff Aase is an individual associated with a disability as defined by 775 ILCS 5/1103(I)(2).

179.    School District is an Institution of Elementary, Secondary, or Higher Education as defined by 775 ILCS 5/5A-102(A).

180.    Plaintiff Q.D. is a student as defined by 775 ILCS 5/5A-102(C).

181.    In relevant part, 775 ILCS 5/1-102(A) states it is the public policy of this state "[t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her…disability….and the availability of public accommodations."

182.    In relevant part, 775 ILCS 5/1-103(I)(2) states, "[d]iscrimination based on disability includes unlawful discrimination against an individual because of the individual's association with a person with a disability."

183.    School District committed a civil rights violation, in violation of the IHRA, when it did not take Plaintiff Aase's concerns regarding her advocacy for Plaintiff Q.D. and the denial of his accommodations seriously due to the fact she is associated with an individual with a disability.

184.    At all relevant times herein, School District had actual knowledge of Plaintiff Q.D.'s meaningful exclusion from school and the substantial risk of harm that this created for Plaintiff Aase

185.    School District was deliberately indifferent to Plaintiff Aase's unqualified right to advocate for Q.D.'s meaningful participation in its education programs.

186.    By refusing to allow Plaintiff Aase to advocate for Plaintiff Q.D.'s meaningful participation in education programs, School District discriminated against Plaintiff Aase on the basis of her association with an individual with a disability.

187.    By disregarding Plaintiff Aase's ability as a parent to advocate for Plaintiff Q.D.'s meaningful participation in education programs, School District discriminated against Plaintiff Aase on the basis of her association with an individual with a disability.

188.    School District discriminated against Plaintiff Aase on the basis of her association with an individual with a disability by treating her differently and not taking her concerns as

seriously as they would take the concerns of a similarly situated parent who did not have a student with a disability.

189.    By refusing to make reasonable accommodations to its education programs to allow Plaintiff Aase to advocate for Student's meaningful participation in education programs, School District discriminated against Plaintiff Aase on the basis of her association with an individual with a disability by disregarding her ability to advocate for her child and causing her to take off time from work due to School District denying her son an education.

190.    As a proximate result of School District's conduct, Plaintiff Aase suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

WHEREFORE, Plaintiff Aase respectfully requests judgment in her favor and that this Court award Plaintiff Aase such monetary damages as would fully compensate her for her injuries caused by School District's actions; statutory interest; pre- and post-judgment interest; costs and expenses; reasonable attorney fees; and grant any additional relief as the Court deems just and proper.

## COUNT NINE: SECTION 504 OF THE REHABILITATION ACT AGAINST DEFENDANT SCHOOL DISTRICT

191.    Plaintiffs incorporate the allegations listed above by reference.

192.    Plaintiff Q.D. is a qualified individual with a disability within the meaning of 29 U.S.C. § 794(a). He has mental impairments that substantially limit major life activities, including thinking, sleeping, and learning. He meets the essential eligibility requirements for participation in School District's educational programs.

193.    School District wrongfully refused to make reasonable accommodations to its education programs to allow Student. to fully and safely participate in and take advantage of its

education programs. The accommodations requested by the Plaintiffs, including the break pass, did not impose an undue financial or administrative burden or fundamentally alter the nature of School District 's programs.

194.    School District denied Plaintiff Q.D. his reasonable accommodation and, as a result, excluded him from school.

195.    At all relevant times herein, School District had actual knowledge of Student's meaningful exclusion from school and the substantial risk of harm that this created to Student.

196.    School District  intentionally excluded Student from meaningful participation in its instructional programs, particularly its classes. School District was deliberately indifferent to Student's unqualified right to meaningful participation in its education programs.

197.    By intentionally excluding Student from meaningful participation in its instructional programs, School District acted in bath faith and/or gross misjudgment.

198.    By refusing to make reasonable accommodations to its special education programs to allow Student to participate meaningfully, School District discriminated against Student on the basis of his disability in violation of Section 504.

WHEREFORE, Plaintiff Q.D. respectfully requests judgment in his favor and that this Court declares School District 's conduct unlawfully discriminated against Plaintiff Q.D. and violated Section 504, award Plaintiff Q.D. such damages as would fully compensate him for his injuries caused by School District 's actions; award Q.D. reasonable costs, expenses, attorney's fees, and prejudgment interest as permitted by 42 U.S.C. § 1988, and for all costs, expenses, fees, and pre- and post-judgment interest associated with bringing this action; and for such other and further relief as the Court deems just and proper.

**COUNT TEN: 42 U.S.C. § 1983 – EXCESSIVE FORCE AGAINST DEFENDANT ROOS**

24

199.    Plaintiffs incorporate the allegations listed above by reference.

200.    Under 42 U.S.C. § 1983, a person whose action under color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

201.    The actions of Defendant Roos's constituted unreasonable, unjustifiable, and excessive force against Plaintiff Q.D. thus violating his rights under the Fourth Amendment to the United State Constitution and 42 U.S.C. Section 1983.

202.    Defendant Roos's conduct injured Student.

203.    Defendant Roos inflicted physical violence upon Student that was excessive, unnecessary, unreasonable, and grossly disproportionate to the need for action under the circumstances.

WHEREFORE, as a result of Defendant Roos's unconstitutional actions, Plaintiff Q.D. requests compensatory damages, punitive damages, cost and attorney's fees, and additional relief that this Court deems equitable and just.

## COUNT ELEVEN: VIOLATION OF 42 U.S.C. §1983- DUE PROCESS BY DEFENDANT ROOS AGAINST PLAINTIFF Q.D.

204.    Plaintiffs incorporate the allegations listed above by reference.

205.    Under 42 U.S.C. §1983, a person who, acting under the color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

206.    Defendant Roos's conduct violated Student 's substantive due process rights.

207.    By removing Student from school and placing him in a prone hold, while Student was obviously displaying symptoms of his disability and known to have a disability, Defendant Roos created and/or increased the danger that Student would be harmed.

208.    Further, Defendant Roos harmed Student by restraining Student while Student was still displaying symptoms of his disability.

209.    Defendant Roos previously spoke with Plaintiff Aase regarding Student's disability.

210.    Defendant Roos was aware the prone hold was illegal in schools and was aware that Student was disabled.

211.    Defendant Roos violated Student's Fourteenth Amendment Substantive Due Process Rights when he acted with deliberate indifference to a substantial risk that Student would be harmed.

212.    Defendant Roos knew that there was a foreseeable risk that Student would be harmed if not protected from the violent physical force.

213.    Defendant Roos knew that Student was disabled, a minor, and that he had no other avenues of protection.

214.    As a result of Defendant Roos's conduct, Plaintiff Q.D. sustained physical injuries.

WHEREFORE, Plaintiff Q.D. demands judgment against Defendant Roos for compensatory damages, punitive damages, costs and attorneys' fees and additional relief that this Court deems equitable and just.

## COUNT TWELVE: TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND § 504 OF THE REHABILITATION ACT AGAINST DEFENDANT ROOS

215.    Plaintiffs incorporate the allegations listed above by reference.

216.    Plaintiff Q.D. is and was at all times pertinent hereto a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1) in that he has an Emotional Disorder, ADHD, and anxiety.

217.    Student's Emotional Disorder, ADHD, and anxiety is a disability as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Student; a record of such an impairment; and/or Defendant Roos perceives him to have a disability.

218.    Defendant Roos knew or should have known that Plaintiff was disabled.

219.    Defendant Roos perceived Plaintiff as disabled.

220.    Defendant Roos provide(d) a public community care-taking service on behalf of the City of East Peoria.

221.    Student was eligible to receive the benefit of that public community care-taking service at all times relevant hereto.

222.    Defendant Roos denied Student the benefits of that public service because of Plaintiff's disability.

223.    Defendant Roos failed to provide Student with reasonable accommodations for his disability.

224.    Defendant Roos acted intentionally and/or with deliberate indifference to Student's rights.

225.    As a result of Defendant Roos's conduct, Student was harmed.

WHEREFORE, Plaintiff demands judgment against Defendant Roos for compensatory damages, punitive damages, costs and attorneys' fees, and additional relief that this Court deems equitable and just.

### COUNT THIRTEEN: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND § 504 OF THE REHABILITATION ACT AGAINST DEFENDANT CITY OF EAST PEORIA

226.    Plaintiffs incorporate the allegations listed above by reference.

227.    Defendant City has a duty to train its employees regarding how to interact with individuals with disabilities in the course of an investigation.

228.    Defendant City failed to train the individual Defendant Roos to recognize the signs, symptoms and care necessary to aid people who have mental illness or mental health disability.

229.    The excessive force and due process violations against Plaintiff Q.D. could have

been avoided if Defendant Roos received proper training from the City.

230.    As a proximate result of the above-detailed actions, Plaintiff Q.D. was injured.

231.    The violations detailed above were caused in part by the customs, policies, and practices of the defendants, as promulgated, enforced and disseminated by the City and their various departments, agencies and subsidiaries, whereby those charged with ensuring compliance with the Constitution of the United States, in this case and many other cases, instead deliberately, willfully and wantonly encouraged the improper supervision and training of police officers in East Peoria in violation of the United States Constitution.

232.    The policies, practices, and customs herein complained of are so prevalent and widespread with the Defendant City, as to put East Peoria policy makers on actual and implied notice that such policies existed in full force and effect.

233.    The City of East Peoria policymakers acted willfully, wantonly, and deliberately indifferent toward the constitutional rights of Plaintiff by accepting, maintaining, protecting, and encouraging the unconstitutional policies, practices, and customs listed above.

234.    By acting willfully, wantonly, and deliberately indifferent towards the Plaintiff Q.D.'s constitutional, Defendant City of East Peoria policymakers caused the constitutional violations alleged in this Complaint.

WHEREFORE, Plaintiff Q.D. demands judgment against Defendant Roos for compensatory damages, costs and attorneys' fees, and additional relief that this Court deems equitable and just.

## COUNT FOURTEEN: 42 U.S.C. § 1983 –FALSE ARREST AS AGAINST DEFENDANT ROOS

235.    Plaintiffs incorporate the allegations listed above by reference.

236.    Defendant Roos's actions, as described above, whereby he knowingly seized

Plaintiff Q.D. without probable cause or any other justification constituted deliberate indifference to Student's rights under the U.S. Constitution, thus violating the Fourth and Fourteenth Amendments to the United States Constitution.

237.    As a result of the illegal seizure, Student was injured, including loss of liberty, emotional damages, trauma, humiliation, mental distress, and anguish.

238.    The actions of Defendant Roos were objectively unreasonable and were undertaken intentionally with malice, willfulness, and reckless indifference to Student's rights.

WHEREFORE, Plaintiff Q.D. demands judgment against Defendant Roos for compensatory damages, punitive damages, costs and attorneys' fees, medical expenses, and additional relief that this Court deems equitable and just.

## COUNT FIFTEEN: STATE CLAIM- BATTERY AGAINST DEFENDANT CITY OF EAST PEORIA

239.    Plaintiffs incorporate the allegations listed above by reference.

240.     Without the consent of Plaintiff Q.D., Defendant Roos, acting as agents of the city intentionally, harmfully, and offensively touched Plaintiff Q.D. as set forth supra.

241.    All Individual Defendants were acting at all relevant times as agents of their principal, Defendant City of East Peoria.

242.    This intentional and unauthorized touching damaged Student.

243.    Defendants' conduct that resulted in this battery was undertaken with malice, willfulness, and reckless indifference to Plaintiff Q.D.'s rights.

244.    Defendant Roos's misconduct was within the scope of his employment and as an agent of the City of East Peoria.

245.    City of East Peoria is liable both under a *respondeat superior* theory and negligent hiring and negligent training theory.

WHEREFORE, Plaintiff Q.D. demands judgment against the City of East Peoria for compensatory damages, costs, medical expenses, and additional relief as this Court deems equitable and just.

## COUNT SIXTEEN: STATE CLAIM- INTENTIONAL WILLFUL AND WANTON NEGLIGENCE AGAINST THE CITY OF EAST PEORIA

246.    Plaintiffs incorporate the allegations listed above by reference.

247.    Defendant Roos had a duty to protect Plaintiff Q.D. from violence while he was in their custody and care.

248.    Defendant Roos breached this duty by inflicting physical harm upon Student.

249.    Defendant Roos further breached this duty by allowing each other to inflict physical harm upon Student.

250.    Defendant Roos intended to cause, or were in reckless disregard of the probability that their conduct would cause harm to Student.

251.    Defendant Roos's conduct was undertaken with malice, willfulness, and reckless indifference to Student's rights.

252.    As a result of the individual Defendant Roo's conduct, Student sustained physical injuries as well as emotional pain and suffering.

253.    Defendant Roos's misconduct was within the scope of his employment and as agent of the City of East Peoria.

254.    The City of East Peoria is liable both under a *respondeat superior* theory and negligent hiring and negligent training theory.

WHEREFORE, Plaintiff Q.D. demands judgment against the City of East Peoria for compensatory damages, costs, medical expenses, and additional relief as this Court deems equitable and just.

## COUNT SEVENTEEN: INDEMNIFICATION CLAIM AGAINST THE CITY OF EAST PEORIA

255.    Plaintiffs incorporate the allegations listed above by reference.

256.    A plaintiff may bring an indemnification claim against a municipality in section 1983 suit under 745 Ill. Comp. Stat. § 10/9-102.

257.    In committing the acts alleged, Defendant Roos is a member and agent of the East Peoria Police Department, and his actions were incident to the service of employment with the Defendant City of East Peoria.

258.    As a direct and proximate result of Defendant Roos's unconstitutional actions, Plaintiff Q.D. suffered significant emotional injuries including mental and emotional damage, physical damages and pain and suffering as alleged in this Complaint and are entitled to relief under 42 U.S.C. § 1983.

259.    Defendant Roos's misconduct was within the scope of his employment and under the color of law such that his employer, City of East Peoria, is liable for those actions.

WHEREFORE, should any individual Defendant be found liable on one or more of the claims set forth above, Plaintiff demands, pursuant to 745 ILCS 10/9-102, that Defendant City of East Peoria be found liable for any compensatory judgment Plaintiff obtains against said Defendants, as well as attorneys' fees and costs awarded, medical expenses and such other and additional relief that this Court deems equitable and just.

## COUNT EIGTHEEN: VIOLATION OF THE ILLINOIS CIVIL RIGHTS REMEDIES RESTORATION ACT AGAINST ALL DEFENDANTS

260.    Plaintiffs incorporate the allegations listed above by reference.

261.    Plaintiff Q.D. is an individual entitled to protection under the Americans with Disabilities Act.

262.    Plaintiff Aase is an individual entitled to protection under the Americans with Disabilities Act.

263.    Plaintiff Q.D. is an individual entitled to protection pursuant to 775 ILCS 60/15.

264.    Plaintiff Aase is an individual entitled to protection pursuant to 775 ILCS 60/15.

265.    Defendants above-mentioned actions are violations of Plaintiffs' Civil Rights, as defined under 775 ILCS 60/15.

WHEREFORE, Plaintiffs pray that this Court enter an ORDER declaring Defendants' actions constitute civil rights violations under 775 ILCS 60/5, awarding Plaintiffs such damages as would fully compensate them for their injuries caused by Defendants' civil rights violations, including compensatory and punitive damages, emotional pain and suffering, and other nonmonetary losses that may determined by a jury or a Court sitting without a jury, but in no case less than $4,000; awarding Plaintiffs their costs, expenses, and attorney's fees; and granting any additional relief as the Court deems just and proper

## **JURY DEMAND**

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury of all issues triable by a jury.

Dated: April 25, 2025

Respectfully Submitted,

**KENNEDY HUNT, P.C.**

By: */s/ Michelle K. Faron*
Michelle Faron, #6322507
Sarah Jane Hunt
Kennedy Hunt, P.C.
4500 West Pine Blvd.
St. Louis, MO 63108
(314) 872-9041
michelle@kennedyhuntlaw.com

32