**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| STEPHANIE AASE *as Next Friend on behalf of her minor son, Q.D., and in her individual capacity*,<br>        Plaintiff,<br><br>v.<br><br>EAST PEORIA COMMUNITY SCHOOL DISTRICT 309 et al,<br>        Defendant. | Case No. 1:25-cv-01043-JEH-RLH |

**Order**

Now before the Court is the Defendant East Peoria Community School District 309's Motion to Dismiss (D. 33).[1] For the reasons stated, *infra*, the Motion is GRANTED. The Plaintiff shall have leave to amend her Complaint within twenty-one days if she believes she can state a claim in accordance with this Order.

**I**

Plaintiff, Stephanie Aase ("Aase"), filed her Complaint on behalf of her minor son, Q.D, as Next Friend and in her individual capacity on January 31, 2025. (D. 1). On May 28, 2025, the Plaintiff filed an Amended Complaint naming as Defendants East Peoria Community School District 309 ("School District"), the City of East Peoria ("City"), and East Peoria Police Officer David Roos ("Officer Roos"). (D. 27). On June 5, 2025, the School District filed a Motion to Dismiss (D. 33). On June 20, 2025, the Plaintiff filed her Memorandum in Opposition. (D. 34). The matter is now fully briefed.

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

**II**

According to the Amended Complaint, "Plaintiff Q.D. is a fifteen-year-old boy who resides with his mother, Plaintiff Stephanie Aase, in East Peoria, Illinois." (D. 27 at ECF p. 2). Q.D. is a student at the School District and has multiple disabilities, including diagnoses for Emotional Disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), and anxiety. *Id.* at ECF p. 4. As a result of these disabilities, Plaintiff alleges that Q.D. is substantially limited in "his ability to engage in one or more life activities in that he is unable to build or maintain satisfactory interpersonal relationships with peers or teachers; has inappropriate types of behaviors or feelings under normal circumstances; has a general pervasive mood of unhappiness or depression; tends to develop symptoms or fears associated with personal or school problems; is easily annoyed, irritated, nervous or anxious; has difficulty following rules/questions authority; has difficulty handling and coping with frustration; has low self-esteem; has intense, persistent emotional responses that can interfere with daily function; and has difficulty managing and expressing emotions." *Id.* at ECF p. 4. Plaintiff also states that Q.D. elopes as a coping skill. *Id.* at ECF p. 4.

Because of these disabilities, Plaintiff states that the School District provides Q.D. with reasonable accommodations that provide him with the ability "to leave class as needed in order to calm himself and self-regulate" and "call Aase as needed". *Id.* at ECF p. 4-5. Plaintiff further alleges that the Defendants are aware of Q.D.'s disabilities and of Plaintiff's association with Q.D. as a disabled person. *Id.* at ECF p. 5. On August 31, 2023, Plaintiff alleges that a math teacher believed Q.D. and two other students were cheating on a math test and sent Q.D. to the principal's office, but not the two other students, who Plaintiff believes do not have the same disabilities as Q.D. *Id.* Once Q.D. arrived in the principal's office, Plaintiff alleges Q.D. was lectured and subsequently became dysregulated,

2

1:25-cv-01043-JEH-RLH   # 35   Filed: 07/16/25   Page 3 of 12

ultimately leading to Q.D. leaving the principal's office when the bell rang "in order to self-regulate per his accommodation" and that the principal then went to Q.D.'s class and "tried to force him out of the room." *Id.* at ECF p. 5. Plaintiff states that Q.D. became further dysregulated and attempted to call Aase, per his accommodation, which the principal did not allow, and then physically removed Q.D. from the classroom. *Id.* at ECF p. 5.

After being removed from the classroom, Plaintiff alleges that Q.D. tried to elope to the bathroom but was restrained by the principal who then called Officer Roos. *Id.* at ECF p. 6. The Plaintiff alleges Officer Roos "responded by pushing [Q.D.] to the ground in a prone restraint"[2] and held him there until a second officer arrived to hold Q.D. "face-down on the ground" while Officer Roos handcuffed him and "'perp walked' him to a police car parked outside the school building." *Id.* at ECF p. 6. When Aase arrived, Q.D. was uncuffed and ultimately released into Aase's care, but Plaintiff alleges Officer Roos told Aase that "he told her this summer, this is how it's going to be if he doesn't act right." *Id.* at ECF p. 6-7. Following the incident, Plaintiff alleges that Q.D. suffered marks and bruising on his wrist from the handcuffs, and that Q.D. "repeatedly stated he was hurt[,] could not feel his hands", and was having trouble breathing, all while the officers failed to assist him. *Id.* Officer Roos reported that Q.D. kicked him during the incident, but Plaintiff disputes this. *Id.* Plaintiff states the City charged Q.D. with aggravated battery and resisting a peace officer, but that the Court dismissed the charges "in a manner indicative" of Q.D.'s innocence. *Id.* at ECF p. 7. Following this incident, Plaintiff alleges Q.D. endured additional psychological injuries because of the City's failure to train officers to render aid to individuals with mental health disabilities and that the School District "did not discipline the two non-disabled

---

[2] Plaintiff claims that "Per 23 IAC 1.285(d)(4)(F), prone restraint is prohibited in all Illinois public schools, special education cooperatives, and nonpublic facilities." (D. 27 at ECF p. 6).

individuals involved in the incident with the math teacher." *Id.* Following this incident, Aase began expressing concerns about Q.D.'s safety and whether he was being provided with his accommodations. *Id.*

Later, on January 26, 2024, Plaintiff alleges the School District sent Q.D. home because he requested it. *Id.* at ECF p. 8. But Plaintiff disputes this, alleging Q.D. did not want to leave, and Aase informed the School District that she believed he was sent home as a pretext for the School District to avoid providing him with his accommodations. *Id.* Five days later, on January 31, 2024, Plaintiff alleges the School District tried to send Q.D. home again even though he did not want to leave, and that the School District "attempted multiple times to force" Q.D. to leave class so as to avoid providing him with reasonable accommodation. *Id.* Aase informed the School District again that she believed its attempts to send Q.D. home were to avoid accommodating his disabilities. *Id.* Thereafter, Plaintiff alleges the education director called Aase and informed her that the School District wanted to change Q.D.'s educational placement which the Plaintiff alleges was in retaliation to her informing them she believed they were discriminating against Q.D. *Id.*

In response to these allegations, Plaintiff filed charges of discrimination with the Illinois Department of Human Rights ("IDHR") on February 28, 2024. *Id.* at ECF p. 9. Plaintiff states that on November 2, 2024, the IDHR issues its notice of dismissal on the two charges and received a right to sue.[3] In the Amended Complaint, the Plaintiff alleges eighteen counts against varying Defendants. (D. 27 at ECF p. 1-32). The School District is the only Defendant that filed a Motion to Dismiss. (D. 33). Accordingly, the Court considers the Motion to Dismiss according to the Counts alleged against the School District. The Plaintiff first

---

[3] Plaintiffs stated they "attach the rights [sic] to sue as Exhibit 1" but no exhibit was attached.

alleges violations of the Americans with Disabilities Act ("ADA") in Counts One through Four for failure to accommodate, disability discrimination, retaliation, and association, respectively. (D. 27 at ECF p. 9-16). In Counts Five through Eight, the Plaintiff alleges violations of the Illinois Human Rights Act ("IHRA") for failure to accommodate, disability discrimination, retaliation, and association, respectively. *Id.* at ECF p. 16-23. In Counts Nine and Eighteen, the Plaintiff alleges a violation of Section 504 of the Rehabilitation Act and a violation of the Illinois Civil Rights Remedies Restoration Act, respectively. *Id.* at ECF p. 23 & 31.

### III

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief". FED. R. CIV. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (2007)). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.* The Court is to draw all reasonable inferences in favor of the non-movant, but the Court "need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'"

*Vesely v. Armslist LLC*, 762 F.3d 661, 665-66 (7th Cir. 2014) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).

At the outset, the School District asserts that it does not have the legal capacity to be sued and, because of that, all claims against the School District ought to be dismissed with prejudice.[4] (D. 33 at ECF p. 8-9). The Plaintiff disputes this point arguing that the School District can be joined properly as a Defendant in this case. For the reasons that follow, the Court agrees with the Defendant that the School District does not have the capacity to be sued under the instant cause of action.

The School District relies on Illinois law for the proposition that "only a board of education is amenable to suit, not its corresponding school district or the individual schools within those districts." (D. 33 at ECF p. 8) (citing 105 ILL. COMP. STAT. § 5/10-2). Federal courts look to state law "to determine if a defendant is amenable to suit." *DeGenova v. Sheriff of Dupage Cnty.*, 209 F.3d 973, 976 n.2 (7th Cir. 2000) (citing FED. R. CIV. P. 17(b)). Under Illinois law, § 5/10-2, it states, "The directors of each district shall be a body politic and corporate, by the name of 'school directors of district No. . . . , county of . . . . and State of Illinois,' and by that name may sue and be sued in all courts and places where judicial proceedings are had." 105 ILL. COMP. STAT. § 5/10-2. Indeed, in *Klean v. Bd. of Educ. of Proviso Twp. Sch. Dist. 209*, 2010 WL 3732218, at *2 (N.D. Ill. 2010), the Court observed, "According to Illinois law, the District is a geographical area in which the Board operates schools." "Moreover, the Illinois School Code makes the Board, not the District, amenable to suit." *Id.* (citing 105 ILL. COMP. STAT. § 5/10-2). The Court in *Klean* went on to hold, "the Board, not the District, is the proper defendant in this

---

[4] "The case law supports the idea that issues of capacity under Fed. R. Civ. P. 17(b) raised by a motion to dismiss are sufficient to state a negative averment under Fed. R. Civ. P. 9(a)." *Cooper v. Wal-Mart Stores, Inc.*, 959 F. Supp. 964, 966 n.2 (C.D. Ill. 1997).

suit. Therefore, the Court dismisses the claims plaintiff asserts against the District." *Id.* (dismissing Title VII, § 1981, and § 1983 claims against the district). Indeed, many Illinois courts have held similarly. In *Smoler v. Bd. of Educ. for W. Northfield Sch. Dist. No. 31*, 524 F. Supp. 3d 794, 802 (N.D. Ill. 2021), the Court observed, "Illinois courts have held that while a school board is a proper defendant, a school district is not, unless another provision of the school code or another statute specifically authorizes a school district to sue or be sued." *See also Doe v. School District U-46*, 557 F. Supp. 3d 860, 871 (N.D. Ill. 2021) (dismissing claims against the school district when plaintiffs did not argue any statute specifically authorized the suit against the district); *Peoples v. Oswego Cmty. Sch. Dist.*, 2020 WL 1330652, at *3 (N.D. Ill. 2020) (dismissing § 1983 and state law tort claims against the school district because it was an improper defendant); *Snow v. J. Sterling Morton High Sch. Dist. No. 201*, 2016 WL 5391222, at *2 (N.D. Ill. 2016) (granting defendants motion to dismiss plaintiff's Title VII claims because the school board, not the school district, was the proper defendant); *Matavka v. Bd. of Educ. of J. Sterling Morton High Sch. Dist. No. 201*, 2016 WL 4119949, at *1 n. 1 (N.D. Ill. 2016) ("[U]nder Illinois law the Board of Education of such a school district is the appropriate defendant with the exclusive right to sue or be sued."); *Veazey v. Bd. of Educ. of Rich Twp. High Sch. Dist. No. 227*, 59 N.E.3d 857, 885 (Ill. App. Ct. 2016) ("[A] school district lacks the capacity to sue on its own behalf unless specifically permitted by a companion statute."); *Bd. of Educ. of Bremen High Sch. Dist. No. 228 v. Mitchell*, 899 N.E.2d 1160, 1162 (Ill. App. Ct. 2008) ("Moreover, a board of education is expressly authorized to sue and be sued in all judicial proceedings involving the school district . . . our courts have defined a school district as a geographical area that generally lacks the capacity to sue unless expressly authorized by statute to do so."). Given this precedent, the Court's conclusion that the school district lacks legal capacity in this case is bolstered by

the Illinois Supreme Court's determination that a school district "is composed of the territory included within its corporate boundaries" whereas the "board of education of the particular district, being an agency of the state and not a subdivision thereof, is a separate and distinct corporation, which furnishes the method and machinery for the government and management of the district." *Bd. of Educ. of Dist. No. 88, Cook Cnty. v. Home Real Est. Imp. Corp.*, 38 N.E.2d 17, 20 (Ill. 1941); *see also Cooney v. Soc'y Of Mt. Carmel,* 389 N.E.2d 549, 551 (Ill. 1979) ("The term 'school district' refers to a geographical area and the term 'school board' refers to a group of persons . . ..").

To overcome the School District's argument, the Plaintiff argues that various statutes authorize his claims. *See Smoler*, 524 F. Supp. 3d at 802. ("Illinois courts have held that while a school board is a proper defendant, a school district is not, unless another provision of the school code or another statute specifically authorizes a school district to sue or be sued."). Plaintiff first argues that the IHRA authorizes his claim pursuant to 775 ILL. COMP. STAT. § 5/5-102(C), which covers civil rights violations in public accommodations, and further states that it is a civil rights violation for any public official to "[d]eny or refuse to another, as a public official, the full and equal enjoyment of the accommodations, advantage, facilities or privileges of the official's office or services or of any property under the official's care because of unlawful discrimination." The term "public official" means "any officer or employee of the state or any agency thereof, including state political subdivisions, municipal corporations, park districts, forest preserve districts, educational institutions, and schools." 775 ILL. COMP. STAT. § 5-101(C). It also defines places of public accommodation to include "elementary" and "secondary" schools. *See* 775 ILL. COMP. STAT. § 5-101(A)(11). True, those provisions of the IHRA may apply to schools. However, the IHRA does not explicitly authorize suit against a "school district," instead, Illinois law provides that the school board

would be amenable to suit on behalf of the school district. *See Smoler*, 524 F. Supp. at 802. That is because the school board is "the method and machinery for the government and management of the district." *Mitchell*, 899 N.E.2d at 1163. Moreover, the plain language of the IHRA applies to "any agency" of the state, 775 ILL. COMP. STAT. § 5-101(C), and in *People ex rel Gibson v. Peller*, 181 N.E.2d 376, 377 (Ill. App. Ct. 1962), the Illinois Appellate Court explicitly held that a school board "is an agency of the state government", further confirming that the IHRA applies to school boards, and not school districts. The Plaintiff relies on *Lewis v. Collinsville Cmty. Unit Sch. Dist. No. 10*, 511 N.E.2d 899, 901 (Ill. App. Ct. 1987) and submits that it held that a plaintiff could file a claim "against the school district alleging discriminatory discharge in violation of the IHRA." (D. 34 at ECF p. 14). To the contrary, however, the Court in *Lewis* held that the "plaintiff's direct civil suit was improperly brought and accordingly should have been dismissed by the trial court" because the plaintiff failed to follow the IHRA's procedures for alleging human rights violations. *Lewis*, 511 N.E.2d at 901. Second, Plaintiff relies on *River Bend Cmty. Unit Sch. Dist. No. 2 v. Hum. Rts. Comm'n*, 597 N.E.2d 842, 843 (Ill. App. Ct. 1992), in which the Illinois Appellate Court affirmed the Illinois Human Rights Commission's determination that the school district had engaged in unlawful discrimination. However, that case both predates and is against the manifest weight of the cases previously discussed by the Court that together have held the school board, not the school district, as the proper defendant under similar circumstances. Moreover, the Court in *River Bend* did not consider the issue of whether the school district was a properly named defendant. 597 N.E.2d at 840. And the Seventh Circuit has acknowledged that it has "not faced the question whether an Illinois school district may be sued in its own name" while also observing in the same context that "the unexamined assumptions of prior cases do not control the disposition of a contested issue." *Stanek v. St. Charles Cmty. Unit*

*Sch. Dist. No. 303*, 783 F.3d 634, 640 (7th Cir. 2015). Therefore, the unexamined assumptions of *River Bend* are not controlling here, particularly where *Stanek* left open the question of whether the school district may be sued in its own name and did not discuss the IHRA. *See id.* Thus, without the IHRA authorizing the suit against the school district, Plaintiff's IHRA claims are dismissed without prejudice.

With respect to the ADA, the Plaintiff first relies on *Stanek* for the proposition that the Seventh Circuit "acknowledged that school districts could be sued under the ADA for failing to accommodate disabilities . . . ." (D. 34 at ECF p. 13). But *Stanek* only held that school districts could be sued under the IDEA because Illinois "defines the 'local educational agency' for purposes of IDEA to include a school board or school district." *See* 783 F.3d at 640. The Court in *Stanek* assumed—without discussion—that a school district could be sued pursuant to the ADA and § 504 of the Rehabilitation Act; but the Court did not go so far as to explicitly hold that a plaintiff can sue a school district under either the ADA or § 504. *Id.* at 640-41. Nor has the Plaintiff identified a statute like the one at issue in *Stanek*, in which the Court observed that Illinois had adopted a definition of "local educational agency," for purposes of the IDEA, which included school boards and school districts. *Id.* Instead, Plaintiff relies on § 12181(7)(J) of the ADA to argue that the ADA applies to school districts because § 12181(7)(J) defines a place of public accommodation to include "elementary, secondary . . . or other place of education". 42 U.S.C. § 12181(7)(J). But it does not include in its definition "school district," nor does it suffice to argue—as the Plaintiff does—that because a school itself may be a place of public accommodation, that the school *district* is the proper entity to be sued for alleged shortcomings in a school's policies. To the contrary, Illinois law vests the school board with "all other powers not inconsistent with this Act that may be requisite or proper for the maintenance, operation, and

development of any school or schools under the jurisdiction of the board." 105 ILL. COMP. STAT. § 5/10-20. As such, without a statute authorizing suit against the school district itself, the Plaintiff's claims against the Defendant pursuant to the ADA are dismissed without prejudice.

For similar reasons, the same fate awaits Plaintiff's claim pursuant to 29 U.S.C. § 794, also known as the Rehabilitation Act, which prohibits discrimination against individuals with disabilities by virtue of federal grants and programming. *See* 29 U.S.C. § 794(a); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and N.W. Ind.*, 786 F.3d 510, 516 (7th Cir. 2015). Though it may apply to "school system[s]" broadly, that does not mean that it authorizes suit against the school *district* itself as opposed to the school board. And the Plaintiff all but concedes as much in stating the "Illinois School Code defines a school district as the geographical area within which the board of education operates schools, while the board of education is the governing body responsible for the management of the district." (D. 34 at ECF p. 13). The receipt and use of federal funds alone does not change the fact that the board is the decisionmaker authorized by Illinois law to be sued, and the school district, a mere geographical area. Without the Rehabilitation Act or another statute explicitly authorizing suit against the school district, Plaintiff's claims pursuant to the Rehabilitation Act are dismissed without prejudice.[5]

## IV

For the reasons stated, *supra*, the Defendant's Motion to Dismiss is GRANTED. The Plaintiff is granted leave to amend her Complaint within twenty-one days if she believes she can state a claim in accordance with this Order.

---

[5] Plaintiff did not respond to Defendant's argument with respect to its lack of capacity to be sued under the Illinois Civil Rights Remedies and Restoration Act. (D. 34 at ECF p. 14). Failing to respond results in waiver. *LeSEA Inc. v. LeSEA Broad. Corp.*, 379 F. Supp. 3d 732, 739 (N.D. Ind. 2019) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). Accordingly, Count Eighteen is dismissed as to the School District.

*It is so ordered.*

Entered on July 16, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE